IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


JAMES B. RINEHART,

                    Plaintiff,

        Vs.                                        No.  10-2209-SAC

SAINT LUKE'S SOUTH HOSPITAL,
INC. d/b/a/, SAINT LUKE'S HEALTH
SYSTEM, and SAINT LUKE'S
HEALTH SYSTEM, INC.,

                    Defendants.


MEMORANDUM AND ORDER

        The case comes before the court on the motion to dismiss and

compel arbitration with suggestions in support (Dk. 5) filed by the

defendants, Saint Luke's South Hospital, Inc. d/b/a/, Saint Luke's Health

System, and Saint Luke's Health System, Inc. (collectively referred to as

"Saint Luke's"), the response filed by the plaintiff, James B. Rinehart

("Rinehart"), opposing the motion, (Dk. 6), St. Luke's reply (Dk. 9), the

plaintiff's notice of supplemental authority (Dk. 10), and the defendants'

response to this notice (Dk. 11).

        The plaintiff has filed a class action petition on behalf of all

individuals who received any healthcare treatment from any entity located

in Kansas that is owned or affiliated with Saint Luke's and "whose health insurance claim resulting from treatment was not submitted to their health insurance carrier for potential payment." (Dk. 1, ¶ 30). It is alleged that the defendants filed hospital liens pursuant to the statutes of Kansas and Missouri instead of submitting insurance claims and that the plaintiff suffered financial hardship because his health insurance company did not pay the bills. The plaintiff claims the defendants' billing practices violate the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-623, *et seq.*, and tortiously interfered with the plaintiff's contract with his health insurance carrier. The plaintiff concedes he lacks standing to bring his count three claim for third-party breach of contract and agrees to its dismissal. The defendants' motion to dismiss is ripe as to the remaining claims, including the claim for injunctive relief.

**MOTION TO DISMISS STANDARDS**

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). The court accepts all well-pled factual allegations as

true and views these allegations in the light most favorable to the

nonmoving party. *United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir.

2009), *cert. denied*, 130 S. Ct. 1142 (2010). The court, however, is not

under a duty to accept legal conclusions as true. *Ashcroft v. Iqbal*, --- U.S.

----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009).

The Supreme Court recently clarified the focus of such motions:

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to "state a claim for relief that is
> plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
> 570 (2007)) at 570. A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged. *Id.*
> at 556. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully. *Id.* Where a complaint pleads facts
> that are "merely consistent with" a defendant's liability, it "stops short
> of the line between possibility and plausibility of 'entitlement to relief.'"
> *Id.* at 557.

*Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884

(2009). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct.

at 1949. If the allegations "are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'" *Robbins v.*

3

*Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

The court's decision is the result of extended deliberations largely owing to the unique legal issues, the lack of any state-law precedent, the plaintiff's skeletal complaint, and the parties' failure to link their arguments to key contractual provisions. Frankly, the defendants' motion was logical and facially appealable until the court took a closer look at the Hospital Participation Agreement, Exhibit B, (Dk. 5-2) and compared its terms to those addressed in case law cited in the plaintiff's memorandum. With that expanded context, the court believes the plaintiff's claims move into the realm of plausible.

## CLASS ACTION PETITION

On December 2, 2005, the plaintiff, James B. Rinehart, was brought to the defendant Saint Luke's South Hospital in Johnson County, Kansas, for emergency medical services for injuries sustained in an automobile accident. Saint Luke's treated and continued to treat the plaintiff for these injuries through July 14, 2006. At all relevant times of treatment, Rinehart was covered by a health insurance policy with United Health Care Choice Plus (PPO), and he presented Saint Luke with his

health insurance card and information upon admission.

Saint Luke, however, did not submit the medical bills for treating Rinehart to his health insurance carrier but filed hospital liens pursuant to Kansas and Missouri hospital lien statutes that totaled $11,413.65. The notices of hospital liens are exhibits to the plaintiff's complaint. They include a lien notice to Progressive Insurance dated December 16, 2005, for $2,563.65; the lien notices to Progressive Insurance and Farmers Insurance dated August 8, 2006, for $3,724.00; and a lien notice to Farmers Insurance dated February 18, 2007, for $5,126.00.

Saint Luke's Account Service Unit sent the plaintiff a form letter dated December 15, 2005. The letter notified the plaintiff that he had total charges of $544.15 for emergency services provided on December 9, 2005, and that these charges were pending with the plaintiff's health insurance carrier.

The plaintiff repeatedly requested that Saint Luke's submit all of his bills for medical services to his health insurance carrier for payment. The plaintiff alleges that Saint Luke's is the entity responsible for submitting the bills to the plaintiff's health insurance company and that the plaintiff is

unable to submit the bills directly to his health insurance provider.  The plaintiff further alleges:

> Saint Luke's is the only entity in possession of the information required to make such a submission, and Saint Luke's is the entity that has a contract with the health insurance company for a reduced compensation for treating patients with health insurance (i.e., provider contracts).

(Dk. 1, ¶ 9).

On information and belief, the plaintiff alleges Saint Luke's screens patients for the cause of their treated injuries to determine if there may be third parties who could be ultimately liable for the medical expenses.  And if it is determined the patient's medical "expenses may be eligible for third-party recovery, Saint Luke's will refuse to submit that patient's medical bills to said patient's health insurance provider."  (Dk. 1, ¶¶ 4-5).  Also on information and belief, the plaintiff alleges that Saint Luke's employs this approach on the belief that should a third party become liable for the medical expense then Saint Luke's "will receive a higher reimbursement rate thereby increasing the hospital's profit margin." *Id.* at ¶ 6.

The plaintiff alleges that while waiting for third-party payment, Saint Luke's "routinely pursues payment for the medical bills from those

same patients" by employing such measures as "demanding cash payment directly from the patients, turning said patients over to collection agencies, and by reporting said patients to credit bureaus thereby impairing the patients' credit score." *Id.* at ¶ 7. The plaintiff more specifically alleges his bill for medical services provided at Saint Luke's South was turned over to the collection agency, Venture Financial Services, Inc. of Raytown, Missouri. On information and belief, the plaintiff alleges that Saint Luke's "reported the account negatively on the plaintiff's credit." *Id.* at ¶ 27. In November of 2009, the plaintiff "paid Venture Financial Services, Inc. $3,500.00 to satisfy the Saint Luke's South Hospital Liens." *Id.* at ¶ 29.

## DEFENDANTS' GENERAL ARGUMENTS

The defendants deny their billing practices harm their patient's financial interests and assert the plaintiff's payment of $3,500.00 came from money provided either by his own auto insurance carrier (Progressive Insurance) or by the tortfeasor's auto insurance carrier, (Farmers Insurance). The defendants challenge that the plaintiff's suit seeks to preserve a windfall in which a plaintiff is able to keep any medical expense recovery paid by an auto insurance carrier while the plaintiff's medical expenses are already covered by the plaintiff's health insurance carrier.

The defendants deny any unlawfulness in their billing practices and affirm their actions as simply choosing one of the lawful options for obtaining payment.  In particular, the defendants point to Kansas and Missouri law that allow hospitals who furnish emergency or medical service to patients injured in accidents to seek a lien upon a plaintiff's claim to recover damages for those same injuries.  With the filing of statutory liens, the defendants say they are foreclosed from submitting bills to the plaintiff's health insurance carrier.  The defendants admit this choice carries the risk of no recovery.  Finally, the defendants cite several decisions for the proposition that a hospital may pursue liens over other choices.

## COUNT ONE--VIOLATION OF KANSAS CONSUMER PROTECTION ACT, K.S.A. § 50-623, *et. seq.*

Count one cites the general prohibition in the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-626(b) against deceptive acts and practices and more specifically alleges that Saint Luke's used "deception, fraud, false pretense, false promise misrepresentation, unfair practice and/or . . . conceal[ed], suppress[ed], and omi[tted] . . . material facts in connection with the sale and/or provision of medical services and/or products in the State of Kansas."  (Dk. 1, ¶ 41).  The count alleges the plaintiffs suffered "an ascertainable loss as a direct and proximate

result of Saint Luke's use of, or employment of, a billing practice that is unfair and/or deceptive under the" KCPA. *Id.* at ¶ 42. The final ¶ to this count alleges that "[t]he above described billing practices and related misconduct of Saint Luke's violate the Kansas Consumer Protection by, among other things, constituting an unfair practice and breach of the duty of good faith as required under the Act." *Id.* at ¶ 44.

The defendants contend the plaintiff's complaint fails to allege any specific violations of the Act and only alleges "in a conclusory fashion that Defendant's billing practices are unfair and/or deceptive under the KCPA." (Dk. 5, p. 6). Besides the facial insufficiency of the plaintiff's allegations, the defendants seek dismissal arguing the plaintiff is unable to assert a claim for relief under the KCPA. The defendants say the plaintiff has not alleged and could not allege any intent on St. Luke's behalf to harm patients. The defendants also maintain any claim based on its failure to disclose its billing practice does not rise to an "intentional concealment of a material fact." (*Id.* at 7).

In response, the plaintiff generously construes his complaint as setting forth "multiple bases" for his KCPA claim, including a willful concealment of a material fact but also the willful use of "exaggeration,

falsehood, innuendo or ambiguity as to a material fact."  K.S.A. 50-626(b)(2).  The plaintiff asserts the material fact is whether the hospital's medical bills would be paid by his health insurance carrier.  The plaintiff says this is a fact that influences consumers in their choice of medical providers.

As for defendants willfully making use of representations on this material fact, the plaintiff cites his allegations that he provided the hospital with his health insurance information, that the hospital never told him they would instead seek a hospital lien, and that the hospital sent a letter (Dk. 1, Ex. 3), in which the defendant said it would be submitting the bills to the health insurance carrier.  The plaintiff argues the defendants' communications under these circumstances are "at least innuendos--if not overt misrepresentations--to the effect that the claim will be submitted to a health insurance provider or ambiguous statements concerning the billing practices."  (Dk. 6, pp. 8-9).  The plaintiff notes it is sufficient to allege the defendants knew their statements were deceptive, and it is unnecessary to allege his reliance on the misrepresentations to be an actionable KCPA claim.

As for the defendants' willfully concealing a material fact, the

plaintiff alleges the defendants concealed "the material fact of their intention to pursue a hospital lien rather than to submit" the bills to the plaintiff's health insurance carrier. (*Id.* at 9). The plaintiff asserts the defendant never told him of their actual billing practices and such practices are not so irrelevant that the defendants could have innocently failed to communicate this information. Specifically, the plaintiff claims he was never told that his bills would not be submitted to his health insurance carrier and that he would be held personally responsible for them. Because the defendant failed to even disclose the possibility of this billing practice, the plaintiff argues it is reasonable to infer intentional concealment.

The plaintiff recognizes his burden to prove a willful KCPA violation involving the defendant's intent to harm the consumer. The plaintiff says he has alleged the defendants' intent to harm him by their refusal to submit his bills to the health insurance carrier and by their filing hospital liens against his tort recovery in order to secure more money for their services. The plaintiff alleges the defendant's sole intent "was to procure more money for itself at the expense of depriving Mr. Rinehart of the benefit of this bargain with his health insurance company." (Dk. 6, p.

6).  Additionally, the defendants took wrongful actions in demanding payment directly from the plaintiff and in turning over the bills to a collection agency that negatively impacted his credit rating.

The defendants contend the plaintiff's allegations of an intent to harm are conclusory.  In alleging a profit motive for the defendants' billing practice, the plaintiff overlooks that his medical bills were still paid by third-party insurance companies and that the defendants still received less than one-third of the billed services.  In simply not being able to keep his recovery for medical care and services, the plaintiff has not been harmed and cannot allege any intent to harm on the defendant's part.

As for the claim of willful use of exaggeration, falsehood, innuendo or ambiguity as to material facts, the defendants contend the plaintiff has not alleged this was done to induce the plaintiff to seek medical care from Saint Luke's.  The plaintiff builds this claim on alleged representations inferred at the time of admission and on a form billing letter sent by account services six days after treatment occurred.  The defendants challenge that the plaintiff has not alleged any plausible basis for finding an intent to harm on the defendants' behalf.

As for the claim of willful concealment, the defendants

emphasize that there are no allegations about the patient agreement and that the plaintiff is presumed to know the defendants' legal right to pursue statutory liens on recoveries from third parties.  Nor does the plaintiff deny or allege having paid any money that did not come from third-party insurers.  The defendant seeks outright dismissal because it would be futile to allow the plaintiff the chance to amend his KCPA claim.   For purposes of this motion, the court will presume count one of the plaintiff's complaint is as argued in the plaintiff's response brief.

*Willful Misrepresentation*

"[W]hether or not any consumer has in fact been misled," a supplier violates the KCPA if it makes a willful representation, orally or in writing, that is an "exaggeration, falsehood, innuendo or ambiguity as to a material fact."  K.S.A. § 50-626(b)(2).  "[T]he question under K.S.A. § 50-626 is simply whether . . . [the supplier] engaged in the willful use, in any oral or written representation, of a falsehood as to any material fact."  *York v. InTrust Bank, N.A.*, 265 Kan. 271, 291, 962 P.2d 405 (1998).  The representation is "willful," if done or designed with "an intent to harm the consumer."  *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009).  A material fact is one "'to which a reasonable man would

13

attach importance in determining his choice of action in the transaction in question.'" *York v. InTrust Bank, N.A.*, 265 Kan. at 290 (quoting *Griffith v. Byers Construction Co.*, 212 Kan. 65, 73, 510 P.2d 198 (1973)).

The plaintiff's complaint alleges the defendants' expressly represented their intentions in the letter dated December 15, 2005, from Saint Luke's Account Service Unit. With respect to this letter, the plaintiff alleges that "Saint Luke's initially informed Plaintiff that his medical bills would be submitted to his health insurance carrier for payment, but then refused to do so." (Dk. 1, ¶ 25). The attached letter states in relevant part:

> Our records indicate that UHC CHOICE PLUS is your insurance payer. Once we have received payment, we will be sending you a bill for any remaining balance. If you feel you may have difficulty paying, the Hospital has a financial assistance policy for which you may qualify. Please call us if you have any concerns.
> If we have difficulty collecting payment from your insurance company, we may send you a letter asking for help.

(Dk. 1, Ex. 3). The plaintiff contends he has alleged the defendant intended to harm consumers by procuring more money from a third-party insurer "at the expense of depriving Mr. Rinehart of the benefit of his bargain with his health insurance company." (Dk. 6, p. 6).

The defendants' motion prematurely casts the court into the role of deciding whether there is a genuine issue of material fact over the

defendants' intent.  The plaintiff's petition certainly suggests he continued to receive care and treatment from the defendant after receiving the letter dated December 15th.  Arguably, the letter misled the plaintiff about the defendants' intentions and even may have encouraged the plaintiff to continue receiving care and treatment from the hospital.  On the pleadings and record as it stands, the court is unable to conclude that it is implausible for the defendants to have sent the letter or made other representations at the time of admission without any intent to harm the plaintiff.

*WILLFUL OMISSION OR CONCEALMENT*

"[W]hether or not any consumer has in fact been misled," a supplier violates the KCPA if it engages in the deceptive act or practice of "the willful failure to state a material fact or the willful concealment, suppression or omission of a material fact."  K.S.A. § 50-626(b)(3).  The same operative meanings of "willful" and "material" discussed above apply with this provision.  For a violation under the KCPA, "[b]efore one can willfully fail to disclose a fact, there must be an obligation to communicate the fact."  *Williamson v. Amrani*, 283 Kan. 227, 246, 152 P.3d 60 (2007).

The plaintiff here is alleging the defendants willfully concealed "the material fact of their intention to pursue a hospital lien rather than

15

submit a claim to Mr. Rinehart's health insurer." (Dk. 6, p. 9). If it provides care for a patient 's injuries from an accident, a Kansas hospital "shall have a lien upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected by such patient, . . . , whether by judgment or by settlement or compromise." K.S.A. § 65-406(a). By its plain terms, the statute establishes a lien without reference to whether the patient is covered by health insurance or a health plan through a provider who may or may not have contracted with the hospital. As the defendants note, a party is presumed to know the law and enters contracts "in contemplation of existing law." *Beckman v. Kansas Dept. of Human Resources*, 30 Kan. App. 2d 606, 613, 43 P.3d 891 (2002) (quotation marks and citations omitted).

On the one hand, the plaintiff is presumed to know the hospital's legal right to pursue a statutory lien for the medical care rendered to a patient injured in an accident. On the other hand, the plaintiff has purchased health insurance knowing and expecting that the benefit of his contractual bargain was that a hospital participating with and approved by the plaintiff's insurance provider would submit bills directly to the insurance provider for full payment. At this stage, the court does not dismiss the

reasonableness of a consumer attaching significance in the choice of a

hospital that has a participation agreement with the consumer's health

insurance provider and that is obligated to accept the insurance as full

payment of covered services.

The participation agreement between the plaintiff's insurance

carrier, United Health Care, and St. Luke's provides in relevant part:

> **6.7    Payment under this Agreement is payment in full**.  Payment
> as provided under section 6.4, together with any copayment,
> deductible or coinsurance for which the Customer is responsible
> under the Benefit Plan, is payment in full for a Covered Service.
> Hospital will not seek to recover, and will not accept any payment
> from Customer, United, Payor or anyone acting in their behalf, in
> excess of payment in full as provided in this section 6.7, regardless of
> whether such amount is less than the Hospital's billed charged or
> customary charge.
>
> **6.8    Customer "Hold Harmless."**  Except for Coinsurance, copays,
> deductibles; Hospital will not bill or collect payment for Covered
> Services from the Customer, or seek to impose a lien, for the
> difference between the amount paid under this Agreement and
> Hospital's billed charge or Customary Charge, or for any amounts
> denied or not paid under this Agreement due to:
> i)  Hospital's failure to comply with the Protocols,
> ii)  Hospital's failure to file a timely claim, . . . .

(Dk. 5-2, p. 12).  These terms could be read as providing that St. Luke's

agreed to hold United Health Care customers, including the plaintiff,

harmless from payment for covered services on "any amounts . . . not paid

. . . due to . . . Hospital's [St. Luke's] failure to file a timely claim."  The

parties have not briefed how these terms impact the pending motion and the legal analysis of the plaintiff's claims.  Nor will the court take on the responsibility of fashioning the arguments and analysis *sua sponte*.  On their face, these provisions make the plaintiff's allegation plausible that he was denied the benefit of the bargain he contracted with his health insurer when the hospital refused to submit any claims to the insurer.  The plaintiff's complaint necessarily alleges that St. Luke's knew and intended to deny the plaintiff the benefit of this bargain by not submitting the bills to the insurer.

Nor is this court in a position to conclude from the pleadings that St. Luke's filing of a lien did not harm the plaintiff and were not done without an intent to harm him.  The hospital filed the statutory lien "upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected by such patient, . . . whether by judgment or by settlement or compromise."  K.S.A. 65-406(a).  "A lien is a hold or claim which one has upon the property of another as security for a debt or charge, . . . ."  *Homestead Land Title Co. v. United States*, 249 Kan. 569, 576, 819 P.2d 660 (1991) (internal quotation marks and citations omitted).  On the face of the allegations, the hospital's lien encumbered property of

the plaintiff.  Additionally, there is the question from the participation

agreement whether St. Luke's even could assert a debt against the plaintiff.

*See Dorr v. Sacred Heart Hospital*, 228 Wis. 2d 425, 597 N.W.2d 462, 471-

73 (1999).  Finally, the court cannot overlook the plaintiff's allegations that

St. Luke's "routinely pursues payment of the medical bills from those same

patients" and "does so by, among other things, demanding cash payment

directly from the patients, turning said patients over to collection agencies,

and by reporting said patients to credit bureaus thereby impairing the

patients' credit score."  (Dk. 1, ¶ 7).  The allegation does not appear

baseless in that exhibit five shows St. Luke's turned over the unpaid

medical bills to a collection agency that sent to the plaintiff a notice that

asserted he was "ultimately responsible" for the debt and that requested

personal payment from him.  (Dk. 1, p. 27).  The plaintiff has alleged

sufficient circumstances from which to infer St. Luke's intent to harm.

## COUNT TWO--TORTIOUS INTERFERENCE WITH CONTRACT/BUSINESS RELATIONSHIP

The plaintiff alleges that he enjoyed "a valid business

relationship" with his health insurance provider, that Saint Luke's had

actual knowledge of this business relationship, and that Saint Luke's

"intentionally interfered and prevented Plaintiff . . . from receiving the

19

benefit of their contractual business relationship." (Dk. 1, ¶¶ 46-48). The defendants seek dismissal arguing the plaintiff has not alleged any affirmative action taken by them to procure any breach of the plaintiff's health insurance contract. The defendants attack the plaintiff's petition as offering a formulaic recitation of elements without factual support for plausibility. The defendants challenge that the plaintiff's complaint fails to allege how the defendants' lawful exercise of its right to a statutory lien could be an improper means or a malicious act as to be without justification. The defendants cite case law that has recognized a hospital's right to file a statutory lien instead of seeking payments from Medicaid.

The plaintiff responds that he has alleged a health insurance contract with United Health Care Choice Plus (PPO), that the defendants knew of this contract, that the defendants interfered with his expectancy of having his medical bills covered by health insurance by not submitting the bills to his health insurer and instead filing liens "to collect directly from him," that the defendants' actions were unjustified and legally improper, and that he was damaged as a result. Specifically, the plaintiff claims the defendants induced the breach of his insurance contract because the health insurer's performance on the insurance contract depended on the

defendants' performance under the participation agreement with the health insurer to submit the bills to the insurer.  The plaintiff dismisses any need to cite contractual provisions for the complaint does allege that the defendant must submit the bills for the insurer to perform its contractual obligations. The plaintiff distinguishes the defendants' cited decisions as recognizing the hospital's right to pursue a statutory lien only in the context of Medicaid and the need to protect Medicaid funds.  The plaintiff cites several cases purportedly holding that a hospital is without the right to pursue a statutory lien when the patient is covered by private health insurance.  The plaintiff charges that the defendants' use of the lien statute is contrary to the public policy behind it.  Finally, the plaintiff contends the defendants acted maliciously or improperly as shown by the alleged KCPA violations, by the defendant's profit motive, by the denial of the plaintiff's interests in being covered by his health insurance, and by the societal impact on health insurance coverage.

In reply, the defendants contend the plaintiff has not alleged any specific contractual provisions that obligate them to submit the plaintiff's bills to his health insurer.  Absent this contractual obligation, the defendants say they did not intentionally procure any breach but merely

21

exercised their lawful right to pursue a hospital lien.  The defendants deny any importance to the distinction of its cases involving Medicaid.  The defendants distinguish the plaintiff's cited decisions as involving either unique insurance provisions or the hospital's effort to use the lien to collect even after receiving payment from the health insurance carrier.  The defendants deny their use of the lien statute violates public policy.  The defendants argue the balance of factors establishes their use of statutory liens cannot be improper.

The general rule in Kansas is that a person "who, without justification, induces or causes, a breach of contract will be answerable for any damages caused thereby."  *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106 (1986).  "The elements essential to recovery for tortious interference with a contract are:  (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom."  *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 77 P.3d 130 (2003) (quotation marks and citations omitted).  For there to be an intentional procurement without justification, "Kansas law requires a showing of legal malice, defined as 'a state of mind characterized by an intent to do a harmful act

without a reasonable justification or excuse.'" *Guang Dong Light Headgear Factory Co., Ltd. v. ACI Intern., Inc.*, 2008 WL 53665, at *13 (D. Kan. 2008) (citing in part PIK 3d § 103.05, 124.92 cmt; *L & M Enters., Inc. v. BEI Sensors & Systems Co.*, 231 F.3d 1284, 1288 (10th Cir. 2000); *see Burcham v. Unison Bancorp, Inc.*, 276 Kan. at 425.[1]  The Kansas Court of Appeals has noted "a common theme" in tortious interference with contract cases, that is, "interference with the performance of a contract to further the tortfeasor's own interests, or diversion of some benefit under the contract to the tortfeasor's own use and benefit." *Linden Place, LLC v. Stanley Bank*, 38 Kan. App. 2d 504, 513, 167 P.3d 374 (2007).

        The court is satisfied that the plaintiff's complaint sufficiently

_____

        [1]The court in *Burcham* explained this relationship between malice and justification in these terms:

        "A claim of tortious interference with a contract is predicated upon malicious conduct by the defendant.  *Turner*, 240 Kan. at 12, 722 P.2d 1106.  On the other hand, "[a] person may be privileged or justified to interfere with contractual relations in certain situations." *Reebles, Inc. v. Bank of America, N.A.*, 29 Kan. App. 2d 205, 211, 25 P.3d 871 (2001) (citing *May v. Santa Fe Trail Transportation Co.*, 189 Kan. 419, 424-25, 370 P.2d 390 [1962] ).  "'The term "justification" has been said not to be susceptible of any precise definition.  It is employed to denote the presence of exceptional circumstances which show that no tort has been in fact committed and to connote lawful excuse which excludes actual or legal malice.'"  *Turner*, 240 Kan. at 12-13, 722 P.2d 1106 (quoting 45 Am.Jur.2d, *Interference* § 27)."
276 Kan. at 425.

alleges the element of intentional procurement in that Saint Luke's is the sole entity responsible for and having access to and possession of the billing matters necessary for claim submission. At least on the face of these pleadings, the plaintiff has alleged that Saint Luke's decision to not submit his bills prevented his health insurer from performing its contractual duty of paying his medical expenses. The court believes the claim can survive dismissal without alleging any particular contractual obligation on Saint Luke's part to submit the billings. Moreover, the participation agreement attached to the defendants' motion indicates the plaintiff's allegations are plausible in this respect.

The plaintiff also has sufficiently alleged the absence of justification or malice on the defendant's part in choosing to file a hospital lien over submitting the plaintiff's bills to his health insurer. Much of the court's discussion of the plaintiff's KCPA willful concealment claim applies with equal force here. Based on the terms of the participation agreement and on the case law cited in the plaintiffs' brief, the plaintiff's tort claim is plausible on its face. The defendants' lien is necessarily based on a debt asserted against the plaintiff, and the lien is secured against property of the plaintiff. There is a plausible issue, not yet addressed by the parties, that

the participation agreement precluded the defendants from asserting any debt against the plaintiff for covered services.

As for the lawfulness of a hospital filing a lien when the hospital has contracted for full payment from a third-party source, the defendants cite case law involving the third-party source of Medicaid rather than a private health insurer and a participation agreement with the terms quoted here. *See, e.g.*, *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273 (5th Cir. 2008) (Louisiana law required health care providers to bill third parties liable for a patient's medical expenses before billing Medicaid); *Spectrum Health Continuing Care v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304 (6th Cir. 2005) (held that federal Medicaid law precludes a lien on behalf of a service provider who has already accepted Medicaid reimbursement); *Evanston Hospital v. Hauck*, 1 F.3d 540 (7th Cir. 1993) (same holding), *cert. denied*, 510 U.S. 1091 (1994). Not cited by the defendants, the case of *Speegle v. Harris Methodist Health System*, 303 S.W.3d 32, 38 n. 25 (Tex. Ct. App. 2009), upheld a provider's lien against an insurance settlement "in lieu of billing Medicare" but expressly said its "holding does not address the validity of a hospital lien in situations where the patient is the beneficiary of private medical insurance rather than

25

Medicare."

The plaintiff does cite several cases supporting its claim that the defendants were without legal authority to file the lien here. *See, e.g.*, *Dorr v. Sacred Heart Hospital*, 228 Wis. 2d 425, 597 N.W.2d 462, 472 (1999) (Because the hold harmless clause in the hospital's participation agreement "negates the existence" of the patient's obligation to pay the hospital "and because the filing of the lien violates the hospital's agreement to not seek recourse against . . . subscribers, the hospital is precluded under the contract from asserting its lien rights . . . ."); *Parnell v. Adventist Health System/West*, 35 Cal. 4th 595, 109 P.3d 69, 79 (2005) (Because the hospital agreed in participation agreement to accept the insurer's payment as "payment in full," the patient "no longer owes a debt to the hospital" and the hospital "may not assert a lien.").

This order is not the time to discuss the finer points of the case law cited above, as the parties have not framed the issues within the terms of the participation agreement controlling here. For purposes of this order, the court is satisfied that the plaintiff has a plausible claim that the defendants' filing of the hospital lien was not justified. The court denies the motion to dismiss this claim.

## COUNT THREE--THIRD-PARTY BREACH OF CONTRACT

The plaintiff concedes he lacks standing to pursue this claim and agrees to the dismissal of this claim.

## COUNT FOUR--INJUNCTIVE RELIEF

As there are legal claims remaining and the injunctive relief is principally addressed to relief for the class, the court denies the motion to dismiss this claim.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss (Dk. 5) is granted on count three and is denied in all other respects.

Dated this 8th day of September, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge